UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAKEISHA P.,

                        Plaintiff,

v.                                                    CASE NO. 1:24-cv-00306
                                                      (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docs. 12, 16.) Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 12) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 16) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.  Procedural Background

On September 23, 2019, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of January 18, 2019.  (Tr. 109-10.)  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 108,

119.)  She then timely requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a telephonic hearing before ALJ Stephen Cordovani on January 14, 2021.  (Tr. 62-107.)  On February 17, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff had several severe impairments, including a neck injury, upper back injury, right wrist injury, and right hip injury, but ultimately found she was not disabled.  (Tr. 133-54.)  The Appeals Council granted her request for review, vacated the ALJ's decision, and remanded the matter for consideration of additional treatment records.  (Tr. 155-60.)  Thereafter, the ALJ held another telephonic hearing on June 21, 2022, (Tr. 40-61), and on February 1, 2023, issued another unfavorable decision, finding that Plaintiff was not disabled, (Tr. 15-39).  The Appeals Council denied her request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

**B.   Factual Background[1]**

Plaintiff was born on July 6, 1980, and alleged disability beginning on January 18, 2019.  (Tr. 109.)  Plaintiff finished high school and one year of college.  (Tr. 375.)  Her disabling conditions were initially alleged to include a neck injury, upper back injury, right hip injury, right wrist injury, depression, anxiety, ADHD, anthropophobia, panic attacks, obsessive compulsive disorder, and head trauma.  (Tr. 109-10.)  At the hearing, Plaintiff's counsel indicated that he agreed with the ALJ's previous finding that Plaintiff's neck injury, upper back injury, right wrist injury, and right hip injury were all severe impairments, but he also believed that her depression, anxiety, and PTSD were severe impairments.  (Tr. 44.)

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

2

Plaintiff testified at the second hearing regarding her living situation, explaining that her daughter lived with her and took care of her. (Tr. 45.) Plaintiff indicated that her condition had changed dramatically in the time between the initial and second hearing. (Tr. 47.) She explained that her depression and anxiety had worsened, and she struggled to focus and remember things. (*Id*.) But she described that her physical pain had remained mostly unchanged in that she still experienced a lot of pain. (Tr. 47-48.) Plaintiff testified that she treated biweekly with her therapist and also saw a psychiatrist who prescribed her medication. (Tr. 48.) She indicated that she experienced short-term memory loss as a side effect of one of her medications. (Tr. 48-49.) Plaintiff explained that her anxiety and depression limit her ability to focus, and so she has trouble reading and watching a movie. (Tr. 49.) She indicated that she was able to concentrate through a thirty-minute show, but she had difficulty processing what was happening. (Tr. 49-50.)

Plaintiff also confirmed her prior testimony that she was able to lift four to five pounds (although she indicated she was not sure if she could do any lifting anymore), could stand for ten minutes at a time, and stand for three minutes. (Tr. 50.) She also indicated that she continued to experience panic attacks, at least three to four a day, if not more. (*Id*.) The attacks could last thirty minutes if she was able to take her medication and could last all day without her medication. (Tr. 51.) She also confirmed her prior limitations with her right hand. (*Id*.)

The ALJ also received testimony from a vocational expert (VE). (Tr. 52-60.) The ALJ posed several hypotheticals to the VE, asking the VE to assume an individual "of the same age, education, and work experience as [Plaintiff]." (Tr. 53.) He then asked the VE to assume that "the individual is capable of a range of light exertional activity with standing

and walking however limited to four hours in an eight-hour day. They can frequently climb ramps and stairs. Frequently climb ladders, ropes, and scaffolds. Frequently balance and kneel. Occasionally stoop and occasionally do overhead work." (*Id.*)  The VE confirmed that Plaintiff's past work would not be available to the hypothetical individual, but she testified there would be other jobs available, including an office helper, routing clerk, and photocopy machine operator.  (Tr. 54.)

The second hypothetical included the same limitations but added occasional handling and fingering with the right dominant hand.  (Tr. 55.)  The VE initially indicated there would be no jobs for that hypothetical, but upon further review, testified that a school bus monitor job would be available.  (*Id.*)  If the right dominant hand limitation on handling and fingering were adjusted from occasional to frequent, the VE testified that the jobs of office helper, routing clerk, and photocopy machine operator would remain.  (Tr. 56.)

Finally, the ALJ included an additional limitation of understanding, remembering, and carrying out simple instructions and tasks; no involvement in supervisory duties, no independent decision-making, no strict quotas, minimal changes in work routine and processes, and only occasional interaction with supervisors, coworkers, and the general public.  (Tr. 56-57.)  The VE responded that the routing clerk and photocopy machine operator would remain applicable.  (Tr. 57.)  The VE confirmed that her opinions were based on her training, education, work experience, and how she understands the jobs to be performed in combination with the DOT.  (*Id.*)

### C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2021. (Tr. 21.)

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 18, 2019, through her date last insured of December 31, 2021 (20 CFR 404.1571 *et seq.*). (Tr. 21.)

3. Through the date last insured, the claimant had the following severe impairments: neck injury, upper back injury, right wrist injury, and right hip injury (20 CFR 404.1520(c)). (Tr. 21.)

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 23.)

5. Through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b), because she was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for a total of four hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. In addition, the claimant was able to frequently balance, kneel, climb ramps and stairs, and climb ladders, ropes, and scaffolds, as well as occasionally stoop and perform overhead work. (Tr. 23.)

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). (Tr. 31.)

7. The claimant was born on July 6, 1980, and she was 41 years old, which is defined as a younger individual, age 18-49, on the date last insured (20 CFR 404.1563). (Tr. 31.)

8. The claimant has at least a high school education (20 CFR 404.1564). (Tr. 31.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 31.)

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). (Tr. 31.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.    Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation

to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff asserts three arguments in support of remand.  First, Plaintiff contends that the Routing Clerk job as set forth in the Dictionary of Occupational Titles (DOT), and on which the ALJ relied in part to find Plaintiff not disabled, is obsolete, thereby rendering the ALJ's step five determination unsupported by substantial evidence.  (*See* Doc. 12-1 at 16.)  Second, Plaintiff argues that the ALJ failed to properly evaluate the favorable opinions of consultative examining physician Dr. Liu.  (*See id.* at 22.)  Finally, Plaintiff

maintains that the ALJ improperly substituted his own lay opinion for that of the expert medical providers.  (*See id.* at 26.)

**A.  The ALJ's Step Five Findings are Supported by Substantial Evidence.**

Plaintiff argues that the ALJ erred by relying on the VE's testimony that the job of Routing Clerk, as described in the DOT, exists in significant numbers in the current national economy.  (Doc. 12-1 at 18.)  Plaintiff contends that the Routing Clerk position is obsolete and cannot serve as substantial evidence at step five to support the ALJ's decision.  (*See id.* at 19.)  Plaintiff further maintains that, if the Routing Clerk job is disregarded, the remaining jobs identified by the VE do not exist in sufficient numbers to satisfy the "significant number" requirement at step five, thereby requiring remand.  (*See id.*)

Based on the VE's testimony during the hearing, the ALJ determined that "jobs existed in significant numbers in the national economy" that Plaintiff could have performed when considering her "age, education, work experience, and residual functional capacity." (Tr. 31.)  Specifically, he noted:

> To determine the extent to which these limitations eroded the unskilled light occupational base through the date last insured, I asked the vocational expert at the June 21, 2022, hearing whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that, given all of these factors, the individual would have been able to perform the requirements of representative occupations such as:
>
> a) Office Helper (DOT#239.567-010) (Light, SVP 2): there are 6,841 jobs in the national economy
>
> b) Routing Clerk (DOT#222.587-038) (Light, SVP 2): there are 25,152 jobs in the national economy
>
> c) Photocopy Machine Operator (DOT#207.685-014) (Light, SVP 2): there are 6,188 jobs in the national economy

Although the vocational expert's testimony is not fully consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), there is a reasonable explanation for the discrepancy. The claimant's standing and walking limitation of four hours in an eight-hour workday, and her occasional overhead work limitation, are not directly addressed in the DOT; however, due to the vocational expert's experience, expertise, and reliable testimony at the June 21, 2022, hearing, the vocational expert's responses are accepted in accordance with Social Security Ruling 00-4p. The vocational expert noted all restrictions and still identified jobs based on personal professional experience.

(Tr. 32.)

At step five, the Commissioner has the burden to demonstrate that a claimant can perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. *See* 20 C.F.R. § 416.920(g). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [Plaintiff is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b).

According to Plaintiff, the Routing Clerk position as described in the DOT is obsolete because, given technological advances, such a job cannot exist in any significance within the national economy. But beyond this conjecture, Plaintiff offers no actual evidence in support of her contention.

To the contrary, the Court acknowledges that evidence exists that supports the continued viability of this position. First, the Social Security Administration has not characterized the position as obsolete. While the Social Security Administration has instructed that certain jobs can no longer support a step five determination, it has not done so with the Routing Clerk position. *See* EM-24026 available at https://secure.ssa.gov/apps10/reference.nsf/links/06212024021759PM, (last visited

December 3, 2025); *see also* EM-24027 REV, available at https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last visited December 3, 2025).  The Court sees no reason to substitute its judgment for that of the Administration.

Moreover, at least two courts that have examined the question of whether the Routing Clerk position is obsolete have concluded that it is not.  *See Gonzalez v. Comm'r of Soc. Sec.*, No. 8:23-CV-106-JSS, 2024 WL 489494, at *9 (M.D. Fla. Feb. 8, 2024) (recognizing that "beyond counsel's bare assertions, Plaintiff has provided no documentation or evidence to support her argument that technological advances have rendered the DOT's description of routing clerk obsolete"); *see also Brown v. Comm'r of Soc. Sec.*, No. 2:20-cv-446-JES-MRM, 2021 WL 3476405, at *6 (M.D. Fla. June 29, 2021), *report and recommendation adopted*, 2021 WL 3163972 (M.D. Fla. July 27, 2021).

Plaintiff primarily rests her argument for obsolescence on the out-of-district case of *Kelly P. v. Saul*, 5:18cv00777-MAA, 2019 WL 3573591, at *1 (C.D. Cal. Aug. 6, 2019).  However, as Defendant points out, even that court declined to find the position obsolete.  *See id.* at *6 ("To be sure, what is commonly known about the national job market is inadequate to find that the occupation of router, as it is described in the DOT, is completely obsolete.")  Instead, it found that the number of jobs associated with that position had been eroded by the lessened need for this type of position, and thus concluded that the "significant number" requirement was not satisfied based on the circumstances of that case.  *See id.* ("But it is readily conceivable that technological advances . . . have led to the reduction, at least to a modest extent, in the number of router jobs . . . .  Even a modest reduction of the 28,000 jobs the VE identified — such a

reduction of 15 percent of that number because of technological advances — would mean that the number of available jobs is no longer significant.")

However, even if the Routing Clerk job were excluded from consideration, the remaining jobs of Office Helper and Photocopy Machine Operator would satisfy the "significant number" requirement, thus providing sufficient evidence for the ALJ's step five finding. According to the VE's testimony, the available number of jobs for each of these positions is 6,841 and 6,188 jobs, respectively. (*See* Tr. 32; 54.) This equals 13,029 total jobs. Importantly, courts within this district recognize that, while "there is no bright line test to be applied here[,] . . . numbers between 9,000 and 10,000 have generally been considered to be sufficient to satisfy the Commissioner's step five burden."[2] *Rae L. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00921-TPK, 2025 WL 2611384, at *7 (W.D.N.Y. Sept. 10, 2025) (citing *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018); *Pichardo v. Comm'r of Soc. Sec.*, 714 F. Supp. 3d 183, 195 (E.D.N.Y. 2024) (identifying 13,400 jobs as satisfying the significant number requirement); *George v. Saul,* No. 3:19-cv-01456, 2020 WL 6054654, at *5 (D. Conn. Oct. 14, 2020) (10,500 jobs); *Holly W. v. Comm'r of Soc. Sec.*, No. 22-cv-512S, 2023 WL 4445586, at *4 (W.D.N.Y. July 11, 2023) (11,800 jobs); *Sarah Ann Z. v. Comm'r of Soc. Sec.*, No. 1:19-cv-01110(JJM), 2021 WL 1206516, at *8 (W.D.N.Y. Mar. 31, 2021) (9,840 jobs)).

While Plaintiff argues that a single job must meet the "significant number" threshold, the regulation's plain language contains no such requirement, and courts within this district have concluded as much. *See Sarah Ann Z.*, 2021 WL 1206516, at *7;

---

[2] The Court notes that *Kelly P.* remains inapplicable even under this argument. In *Kelly P.*, the "significant number" threshold identified with by that court was approximately 25,000. *Kelly P.*, 2019 WL 3573591, at *6. The threshold is lower in this Circuit, and thus remains satisfied by the other jobs identified by the VE.

*Schrader v. Saul*, No. 18-cv-898-MJR, 2020 WL 2847276, at *4 (W.D.N.Y. June 2, 2020) (finding two separate positions totaling 11,557 jobs satisfied the "significant numbers" requirement).   Similarly, contrary to Plaintiff's contention, the Court notes that the regulation specifically requires significant numbers in the national economy, not the local economy.   *See* 20 C.F.R. § 416.966(b).

Therefore, the Court finds the ALJ's step five determination to be supported by substantial evidence.

### B.  The ALJ Properly Evaluated Dr. Liu's Opinions.

Plaintiff next asserts that the ALJ erred by failing to properly evaluate the favorable physical RFC opinions of consultative examining physician Dr. Liu.  (*See* Doc. 12-1 at 24.)  Plaintiff argues that, contrary to the ALJ's conclusions, Dr. Liu's clinical findings do support his opinion and, moreover, Dr. Liu reviewed a significant portion of Plaintiff's medical history, which the ALJ did not consider in his evaluation of Dr. Liu's opinion.  (*See id.* at 24-25.)  Finally, Plaintiff contends that the ALJ improperly denied Plaintiff's request to examine Dr. Liu in a supplemental hearing even though the ALJ noted that Dr. Liu's opinion was "internally inconsistent."  (*See id.* at 25.)

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency

and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

Furthermore, genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). While the ALJ is not obligated to

explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995).

In his decision, the ALJ thoroughly examined Dr. Liu's second opinion, issued in June 2022:

> Meanwhile, I note that the claimant underwent a second consultative internal medicine examination with Dr. Liu in June 2022, but I find that this report is not persuasive, because the specific opinions are internally inconsistent, and they are inconsistent with the medical evidence and other opinions in this file through the date last insured (Exhibit 23F). In a narrative medical source statement, Dr. Liu writes that the claimant "has mild to moderate limitation for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing" (Exhibit 23F, page 5). This narrative medical source statement is less restricting than the one he put forth in February 2020, and it has no manipulative limitations. However, in his check-box medical source statement, Dr. Liu indicates that the claimant can only sit for two hours in an eight-hour workday (Exhibit 23F, page 7). Such significant sitting restrictions are inconsistent with the medical evidence, including the well-supported opinions of Dr. Miller, who indicated that the claimant is able to sit for six hours in an eight-hour workday. Dr. Liu's check-box reaching, postural, and environmental limits appear overstated, especially when considered in balance with the medical evidence through the date last insured, as well as Dr. Liu's own clinical findings. In the first examination, the claimant had difficulty moving her neck, but in the second examination, those findings improved—Dr. Liu assigned limits with reaching in all directions in his check box-report, but in light of the claimant's improved findings, these reaching limits were not incorporated into the claimant's residual functional capacity. It is also noted that Dr. Liu indicated that the claimant is able to perform activities of daily living such as shopping, using public transportation, preparing simple meals, feeding herself, caring for her personal hygiene, and sorting, handling, and using paper files (Exhibit 23F, page 11).

(Tr. 29-30.)

The Court finds that the ALJ properly considered and evaluated Dr. Liu's 2022 opinion. First, he thoroughly detailed the reasons supporting his evaluation of the opinion, including the supportability and consistency factors. The ALJ specifically noted that he

found the opinion unpersuasive because "the specific opinions are internally inconsistent, and they are inconsistent with the medical evidence and other opinions in this file through the date last insured." (*Id.*) He then carefully explained why portions of Dr. Liu's opinions were inconsistent with other evidence in the record. (*See* Tr. 30.) The ALJ noted that such limitations were not supported by Dr. Liu's own examination of Plaintiff, nor his findings as to her daily living activities. (*See id.*)

As the parties recognize, Dr. Liu's 2022 opinion is internally inconsistent. Specifically, even though Dr. Liu's "medical source statement" finds only a "mild to moderate limitation for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing," (*see* Tr. 1305), in the checkbox portion of the opinion, he opined that Plaintiff could sit or stand for only one hour at one time without interruption, could only walk two hours at a time without interruption, and could only sit or stand for two hours total in a work day, (*see* Tr. 1307). Dr. Liu further opined that Plaintiff's ability to reach, climb ladders and scaffolds, kneel, crouch, crawl, and tolerate unprotected heights, extreme cold, move mechanical parts, and operate a motor vehicle was limited to "occasionally." (*See* Tr. 1308-10.) Thus, the ALJ properly weighed this internal inconsistency against the opinion's overall persuasiveness.

Further, the ALJ properly found that the opinion was inconsistent with the record, including all other medical opinions. There were seven medical opinions in the record addressing Plaintiff's physical impairments. Three of them appear to be limited to a particular condition and Plaintiff's ability to return to work in spite of that condition, (*see* Tr. 28-29) (identifying opinions by independent medical examiners Drs. Cohen and

Horner, who addressed Plaintiff's lumbar spine allegations, and Dr. Rubinshteyn, who addressed injuries causally connected to her motor vehicle accident, not all of Plaintiff's injuries), while the remaining four addressed Plaintiff's condition as a whole and more specifically examined her physical abilities, (*see id.*). While the Court acknowledges certain of the opinions were found to be unpersuasive by the ALJ because they addressed only the issue of Plaintiff's ability to return to work, which is an issue reserved for the Commissioner, it is still noteworthy that those physicians opined she could return to work without limitation.

Moreover, the other opinions, authored by state agency reviews Drs. Miller and Lawrence, as well as including the first opinion by consultative examining physician Dr. Liu, did not contain anywhere near the level of restriction suggested by Dr. Liu's 2022 checkbox responses. Indeed, Dr. Lawrence opined that Plaintiff could sit for six hours in an eight-hour day, and he assigned no postural, manipulative, or manipulative limitations. (*See* Tr. 116.) Similarly, Dr. Miller opined that Plaintiff could sit for six hours in an eight-hour day, assigned no manipulative or environmental limitations, but she did impose certain postural limitations, including limiting Plaintiff to climbing ramps/stairs/ladders/ropes/scaffolds, balancing, kneeling, crouching, and crawling frequently, while stooping only occasionally. (*See* Tr. 129-30.) Finally, Dr. Liu's first opinion assigned Plaintiff with "moderate limitation for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing." (Tr. 737.) While this is more stringent than the 2022 narrative opinion, it certainly is not as restrictive as the checkbox portion of the report. As the ALJ properly

concluded, these restrictions were outliers as compared to the other opinions in the record, including Dr. Liu's earlier opinion.  (Tr. 30.)

Additionally, as found by the ALJ, these additional restrictions do not appear to be supported by Dr. Liu's physical examination.  The ALJ noted that Plaintiff exhibited certain limitations in moving her neck during the first examination, but not the second, yet Dr. Liu's reaching limitations were more restrictive in the checkbox portion of the second opinion.  (Tr. 30.)  Having reviewed the reports, it does appear that during the first examination, Dr. Liu noted that Plaintiff "declined to change the position of her neck due to severe pain," (*see* Tr. 736), and Plaintiff was able to move her neck during the second examination, (*see* Tr. 1304).  While Plaintiff takes issue with the ALJ's analysis, and points the Court to other facts she contends supports an alternative conclusion, those facts create at most a conflict within the evidence, which is to be resolved by the ALJ.  *Veino*, 312 F.3d at 588.  And, once resolved by the ALJ, it cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citation omitted).  The Court is plainly prohibited from re-weighing the evidence as Plaintiff requests.  *See also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Simply put, Plaintiff's disagreement with the ALJ's resolution of conflicting evidence is not grounds for remand.[3]  *See David C. v.*

---

[3] Plaintiff's claim that the ALJ failed to consider Dr. Liu's review of Plaintiff's medical records does not change this conclusion.  It is well-settled that the ALJ's "failure to cite specific evidence does not mean such evidence was not considered."  *Brault*, 683 F.3d at 448 (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("we do not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.")

*Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").

The Court acknowledges that an ALJ has a duty to develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)–(f)).  However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). In this case, there were multiple medical expert opinions, at least seven, and a complete medical history spanning from 2016 through 2021.  The record was certainly complete enough for the ALJ to make a decision.  *See also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("[An] ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability.")

Moreover, while Plaintiff argues that the ALJ wrongly denied her request to cross-examine Dr. Liu, the Court disagrees.  First, the record plainly reflects that the ALJ did, in fact, request Dr. Liu's appearance at a hearing, and the request was denied due to Dr. Liu's availability.  (*See* Tr. 469) ("we initiated a request to have Dr. Hongbiao Liu cross-examined by the claimant's rep.  We reached the level of HOCALJ Bell and was officially denied. A letter will be sent to the Rep to inform them of the agency's decision.")  Second, the Court notes that the ALJ offered Plaintiff's counsel the opportunity to further develop

the record, but Plaintiff chose not to.  (*See* Tr. 470) (informing Plaintiff's counsel that the request to examine Dr. Liu was denied because he was not available and requesting counsel to advise "whether or not you[] are requesting any further development of the record.")  When Plaintiff did not request additional action regarding Dr. Liu's opinion, the ALJ properly found the record to be sufficiently developed and closed.  *See, e.g., Stephani G. v. Comm'r Soc. Sec.*, No. 1:21-cv-00435, 2024 WL 493501, at * 5 (W.D.N.Y. Feb. 7, 2024) (concluding that the ALJ discharged his duty to develop the record by holding open the record for submission of records but ultimately closing the record when counsel did not request assistance obtaining the outstanding records and the record otherwise contained sufficient evidence to support the disability decision); *see also Schillo*, 31 F.4th at 76 (providing that "a deficiency in the reasoning by a treating physician is not the same as a gap in the treatment records").  And, even if Dr. Liu had affirmed his restrictions, given their inconsistency with the remaining medical expert and objective evidence, the ALJ's decision to find it unpersuasive would have been supported by substantial evidence, as discussed above.

Accordingly, the Court finds no error in the ALJ's evaluation of Dr. Liu's 2022 opinion.

### C.  The ALJ Did Not Improperly Substitute His Own Opinion for the Medical Experts.

In her last argument, Plaintiff contends that the ALJ erred by effectively rejecting all medical opinions in favor of two agency reviewer opinions, which Plaintiff classifies as stale, resulting in an RFC formulated by substituting the ALJ's own lay opinion for that of medical experts.  (*See* Doc. 12-1 at 31.)  Plaintiff contends that these opinions were stale because they were issued in 2020, before significant medical evidence was entered into

the record, including Dr. Tracy's treatment records, Dr. Simmons' 2019 report and medical records, Dr. Huckell's opinion recommending surgery, and Dr. Liu's 2022 opinion. (*See id.* at 31, 33, 35.)

As a preliminary matter, a claimant's RFC is the most she can still do despite her limitations and is based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  This remains the case even if the ALJ decides not to afford controlling weight to any of the medical opinions in the record.  *Schillo*, 31 F.4th at 78.  "An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence*."  Rebecca B. v. Comm'r of Soc. Sec.*, 22-cv-00631-HKS, 2025 WL 90625, at *4 (W.D.N.Y. Jan. 14, 2025) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).

To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). While a medical opinion is not necessarily stale based on its age, it may be stale if it does not account for a plaintiff's deteriorating condition. *See Samantha T. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-139 (JGW), 2024 WL 4582825, at *5 (W.D.N.Y. Oct. 25, 2024) (internal citations omitted). That said, "[a] more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Anthony F. v. Comm'r of Soc. Sec.*, Case No. 23-cv-33-FPG, 2023 WL 7294874, at *4 (W.D.N.Y. Nov. 6, 2023) (internal quotation omitted). "Where the submitted evidence did not directly contradict a doctor's opined limitations, and further, the ALJ analyzed the recent evidence, the doctor's opinion was not impermissibly stale." *Robin H. v. Comm'r of Soc. Sec.*, No. 1:21-CV-507-DB, 2023 WL 3645489, at *13 (W.D.N.Y. May 25, 2023). Plaintiff bears the burden of showing that her condition deteriorated after the medical opinions were provided. *See Christopher C. v. Comm'r Soc. Sec.*, Case No. 20-cv-1774, 2022 WL 16797970, at *4 (W.D.N.Y. Nov. 8, 2022) (citing *Vincent B. v. Comm'r of Soc. Sec.*, 561 F. Supp. 3d 362, 367 (W.D.N.Y. 2021)).

Having carefully reviewed the ALJ's decision, the Court finds that the RFC was formulated based on the record as a whole and was supported by substantial evidence. While Plaintiff seems to argue that the ALJ rejected all opinions but for the agency reviewer opinions of Drs. Lawrence and Miller, the Court disagrees. Rather, the ALJ reviewed and considered the medical record, including treatment records and expert opinions, and formulated a unique RFC based on Plaintiff's condition. It is true that the

ALJ did find unpersuasive the independent medical examiner opinions of Drs. Cohen, Horner, and Rubinshteyn.  (*See* Tr. 28-29.)  However, each of those opinions concluded that Plaintiff could return to work without limitations, which would not support Plaintiff's position.

Further, the ALJ carefully considered the opinion of Dr. Liu rendered in 2020, finding it "generally persuasive," although he rejected the manipulative limitations finding them inconsistent with updated medical records.  (*See id.*)  While Plaintiff takes issue with the ALJ's exclusion of any handling and fingering limitations on her right hand, as such limitations were imposed in the 2021 RFC,[4] (*see* Doc. 12-1 at 34), the Court finds no error.   The ALJ thoroughly explained why he rejected the manipulative limitations contained within Dr. Liu's 2020 opinion:

> I note that Dr. Liu also indicated that "the claimant has moderate limitation for fine manipulation with the right hand to zipper, button, and tie", but I find that this aspect of his opinion, the manipulative limitations, is not persuasive, because it is not consistent with the medical evidence, including the updated medical evidence, through the date last insured (Exhibit 6F, page 5). Dr. Liu's February 2020 clinical findings appear internally inconsistent, as he noted moderate difficulty with right hand fine manipulation, but also noted intact hand and finger dexterity (Exhibit 6F, page 5). Another physical examination of the right hand shortly afterwards, in March 2020, revealed no atrophy, full motion of the digits, and normal sensation (Exhibit 19F, page 4). I note that both reviewing medical consultants, James Lawrence, M.D., and Donna Miller, D.O., did not assign any manipulative limitations (Exhibit 2A, page 8; Exhibit 4A, page 11; Exhibits 8F). The medical evidence submitted after the hearing also shows minimal clinical findings to support any manipulative limitations. An August 2019 physical examination revealed 4/5 and 5/5 flexion strength of the fingers (Exhibit 21F, page 8). An orthopedic physical examination from the same month, August 2019, revealed full hand strength and firm grip strength (Exhibit 21F, page 37). A June 2022 physical examination revealed intact hand and finger dexterity with full bilateral grip strength (Exhibit 23F, page 4).

---

[4] Because the Appeals Council vacated the original decision, that decision and the resulting RFC has no res judicata effect on this decision.  *See Parvon v. Comm'r of Soc. Sec.*, No. 18-CV-226-FPG, 2020 WL 1131220, at *4 (W.D.N.Y. Mar. 9, 2020) (collecting cases).

(Tr. 28-29.) The ALJ supported his rejection of the manipulative limitations by specific record evidence, as required.  *See Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0380 (JJM), 2024 WL 4131237, at *5 (W.D.N.Y. Sept. 10, 2024) (recognizing that "[the ALJ's] explanation was sufficiently specific to satisfy his obligation to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached")(internal citation and quotation omitted).   And an ALJ is permitted to reject portions of medical opinions to the extent they are not consistent with the medical record. *See April W. v. Comm'r of Soc. Sec.,* No. 1:24-cv-00044-MAV, 2024 WL 4804778, at *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence") (quoting *Demeca P. v. Comm'r of Soc. Sec.,* No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)).

Importantly, Plaintiff offers no evidence of deterioration following the agency review opinions so as to render those opinions stale.   The ALJ carefully detailed the record evidence, including from the period after the opinions were issued, and no deterioration was identified. (Tr. 26-30.)   Indeed, Plaintiff herself testified that her condition has remained the same.  (Tr. 47-48.)

Moreover, the ALJ expressly analyzed and considered the records of Dr. Tracy:

Since the last hearing, updated treatment records from Jerry J. Tracy, III, M.D., were added to the file and carefully considered; I find that the new records do not warrant a different assessment. A June 2016 left shoulder MRI revealed only mild tendinopathy (Exhibit 21F, page 92). A March 2019 lumbar spine MRI was normal (Exhibit 21F, page 88). A March 2019 cervical spine MRI revealed disc herniations with minimal encroachment (Exhibit 21F, page 90). A July 2019 Independent Medical Examination (IME) from Dr. Cohen indicated no need for further treatment, and that the claimant can return to work without restrictions (Exhibit 21F, page 69—this IME report was already in the file, *see* Exhibit 17F). An August 2019 pain management

treatment note revealed limited ranges of motion, and that opiates would no longer be prescribed (Exhibit 21F, pages 100-101).

(Tr. 27.)

The other evidence cited by Plaintiff merely reflects that back surgery was a potential treatment option, which the ALJ recognized:

> [Dr. Huckell] noted that she was reasonable candidate for cervical discectomy and fusion at C4-C5. Notably, however, examination findings were unchanged from his previous visits, with normal gait and full strength, despite some reduced range of motion (Exhibit 10F, page 2). By September 2020, the claimant told Dr. Huckell that she continued to have constant pain that brought her to tears at times. Because he could not guarantee improvement with surgery or time, she has declined to have surgery.

(Tr. 27.)  Importantly, as the ALJ acknowledged, Plaintiff ultimately declined to have surgery.  (*See id.*)  Thus, the ALJ considered the evidence Plaintiff identified as unavailable to the agency reviewers, and which was not inconsistent with their opinions, thereby defeating any claim that the opinions were stale.  *See Robin H.,* 2023 WL 3645489, at *13 (recognizing that "[w]here the submitted evidence did not directly contradict a doctor's opined limitations, and further, the ALJ analyzed the recent evidence, the doctor's opinion was not impermissibly stale.")

Plaintiff further maintains that the ALJ acknowledged the staleness of the opinions by noting that further restrictions than opined by Dr. Lawrence were required.  (*See* Doc. 12-1 at 34.)  The Court disagrees.  The ALJ did not characterize Dr. Lawrence's opinion as outdated, but rather acknowledged that further restrictions were supported by the medical evidence.  This is entirely appropriate—not evidence of a stale opinion. *See Jason S. v. Comm'r of Soc. Sec.*, No. 21-cv-101-RJA, 2023 WL 4991928, at *3 (W.D.N.Y. Aug. 4, 2023) (recognizing that "[w]hile the state agency consultant's opinion is only

partially consistent with the record in its entirety, the ALJ accounted for any discrepancies by imposing greater restrictions") (internal citations omitted).  An ALJ is expressly charged with creating an RFC that is consistent with the medical record as a whole, *see Matta*, 508 F. App'x at 56, which is precisely what the ALJ did here.

Finally, as discussed above, the record before the ALJ was certainly complete enough for the ALJ to make a decision.  *See also Janes*, 710 F. App'x at 34 ("[An] ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability.")

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 16) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: December 8, 2025                    J. Gregory Wehrman
Rochester, New York                        HON. J. Gregory Wehrman
                                           United States Magistrate Judge